IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Favian Albarran (Y5464), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21 C 1024 |
| v. ) | |
| ) | Hon. LaShonda A. Hunt |
| Thomas J. Dart, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER

In this *pro se* civil rights lawsuit filed under 42 U.S.C. § 1983, Plaintiff Favian Albarran, formerly a pre-trial detainee at the Cook County Jail, alleges that Defendant Sheriff Thomas J. Dart ("Dart") failed to take reasonable measures to protect him from exposure to COVID-19, resulting in Plaintiff contracting the virus in April 2020. Plaintiff asserts a Fourteenth Amendment conditions of confinement claim against Defendant Dart (in his individual capacity) and a *Monell* claim against Defendant Dart (in his official capacity). Cook County is a Defendant in this case for indemnification purposes. Currently before the Court is Defendants' Motion for Summary Judgment [70]. For the reasons stated below, Defendants' unopposed motion is granted.

### SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material facts exists when "the evidence is

1

such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). A fact is material if it might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door Cty Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). Thus, "summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992) (quoting *Celotex*, 477 U.S. at 322); *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019).

When deciding a motion for summary judgment, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## NDIL LOCAL RULE 56.1 REQUIREMENTS

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary."

*Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). The party opposing summary judgment may also submit "a statement of additional material facts that complies with LR 56.1(d)." L.R 56.1(b)(3). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id*. A plaintiff's *pro se* status does not excuse him from complying with Local Rule 56.1. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

In this case, Defendants filed a Rule 56.1 statement of material facts with their motion for summary judgment. (Dkt. 72). Consistent with the local rules, Defendants also provided Plaintiff with a Local Rule 56.2 Notice, which explains what Local Rule 56.1 requires of a litigant opposing summary judgment. (Dkt. 77). The Court further reminded Plaintiff that his "failure to respond to the summary judgment motion may result in [its] ruling on the motion without the benefit of a response." (Dkt. 79). Despite these warnings, Plaintiff failed to respond to Defendants' motion for

summary judgment. Accordingly, the Court deems Defendants' facts, which are well-supported by record citations, admitted. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

## BACKGROUND

Plaintiff was booked into the Cook County Department of Corrections ("CCDOC") on March 21, 2020, at 8:42 A.M. (Dkt. 72 ¶6). The Cook County Inmate Handbook sets forth procedures for detainees, including the grievance procedure. (*Id*. ¶7). Plaintiff was aware of the coronavirus and its significant risks to health and well-being. (*Id*. ¶8). The World Health Organization ("WHO") had declared COVID-19 a pandemic on March 11, 2020. (*Id*. ¶9). On March 23, 2020, the Center for Disease Control ("CDC") issued guidance regarding COVID-19 in correctional facilities; and on the same day the first two detainees tested positive in the CCDOC. (*Id*. ¶12).

Plaintiff was housed in 8RTU-2F from March 31, 2020 to April 10, 2020. (*Id*. ¶13). He has a chronic gallbladder medical issue and was prescribed Tramadol for that condition while in the CCDOC. (*Id*. ¶14). Plaintiff submitted a grievance about gallbladder pain and received a response from medical staff. (*Id*. ¶15).

Plaintiff was housed in Division 5 Tier 1A from April 10, 2020 to April 29, 2020. (*Id*. ¶16). Plaintiff filed a grievance asking to see a physician regarding his liver and kidney problems and to go to the hospital; he received a response from medical staff. (*Id*. ¶17). Plaintiff's symptoms on or about April 21, 2020 were related to his gallbladder. (*Id*. ¶18).

Plaintiff had numerous court appearances both in person at the Maywood Courthouse and via video while in custody at the CCDOC. (*Id*. ¶19). He received a mask for every video court appearance while he was in custody. (*Id*. ¶20). On April 22, 2020, Plaintiff appeared for a video court appearance and was provided a mask to wear. (*Id*. ¶21). However, the mask broke, and

Plaintiff was not able to catch the mask as it fell or fix the mask because his hands were handcuffed in the rear. (*Id.* ¶22). Another mask was not provided to Plaintiff, because he was told there was not one. (*Id.* ¶23). Plaintiff did not request that the Correctional Officer fix the mask that had broken and fallen to the floor. (*Id.* ¶24). Plaintiff agrees that the purpose of the Cook County Sheriff's Office's ("CCSO") policy on rear handcuffing is for safety and security. (*Id.* ¶25).

Plaintiff was housed in 8RTU-2E from April 29, 2020 to May 1, 2020. (*Id.* ¶26). Plaintiff tested positive for COVID-19 on April 30, 2020. (*Id.* ¶27).

Plaintiff was housed in 8RTU-Tier 39 from May 1, 2020 to May 4, 2020. (*Id.* ¶28). Plaintiff was housed in medical isolation for approximately 14 days after the positive COVID-19 test result. (*Id.* ¶29). Medical isolation refers to confining a confirmed or suspected COVID-19 case to prevent contact with others and to reduce the risk of transmission. It ends when the individual meets pre-established clinical and/or testing criteria for release from isolation, in consultation with clinical providers and public health officials. (*Id.* ¶30). Plaintiff testified that some of the pain he experienced on or about the date of the positive COVID-19 test was due to gallbladder issues and COVID-19. (*Id.* ¶31). Plaintiff filed a grievance stating he wanted to go to the hospital after his positive COVID-19 test result and received a response from medical staff. (*Id.* ¶32). Though Plaintiff also reported symptoms from COVID-19 including difficulty breathing and no taste or smell, the pain he was suffering, coughing up of blood, migraine pain he was prone to, and low appetite on May 7, 2020, were due to ongoing issues with his gallbladder. (*Id.* ¶33). Between April 30, 2020, and May 19, 2020, Plaintiff was seen by medical staff every day he was isolated in order to monitor his symptoms. (*Id.* ¶34). Plaintiff would not request medication from a correctional officer or supervisor as they are not health services. (*Id.* ¶35).

Plaintiff submitted several other grievances concerning shakedowns, being in the

convalescent phase for COVID-19, and regarding access to yard time and sunshine as COVID-19 left him weak and malnourished with atrophied muscles. (*Id.* ¶36). On or about July 16, 2020, Plaintiff stated to medical staff that he had recovered from COVID-19 and was feeling much better. (*Id.* ¶37).

Defendant Dart, as an individual jail official, did not respond to any of Plaintiff's written grievances. (*Id.* ¶38). Defendant Dart's personal signature does not appear on any of Plaintiff's grievance responses. (*Id.*) Each of Plaintiff's grievances regarding COVID-19 responses contain the name and signature of the CCDOC or Cermak staff person who responded to the grievance. (*Id.* ¶39). Plaintiff has not been billed for any medical expenses for care he received while in the custody of the CCDOC. (*Id.* ¶40).

Inmates had access to videos playing between movies in the various Divisions of the CCDOC with information regarding how to stop and slow the spread of COVID-19. (*Id.* ¶41). Printed materials were prepared and kept in the normal course of business pursuant to Cook County Sheriff policy to post on the walls of CCDOC and they were directed towards staff and inmates regarding COVID-19 policies and procedures. (*Id.* ¶42). In the jail, Plaintiff had access to cleaning supplies as they became available. (*Id.* ¶43). Plaintiff cannot confirm whether surfaces were cleaned or not and at what times when he was not in those areas. (*Id.* ¶44). Measures taken by the CCSO and by the CCDOC at all times conformed with the ongoing and evolving recommendations from the CDC and the Chicago Department of Public Health ("CDPH"). (*Id.* ¶ 45).

At the time Plaintiff was in custody at the CCDOC, policies and procedures were in place that were recommended by the CDC in order to combat COVID-19. (*Id.* ¶46). In the CCDOC, policies regarding social distancing, screening for COVID-19, medical isolation and/or quarantine for those inmates who are symptomatic and/or test positive for COVID-19, and for cleaning and

disinfecting were followed by the CCSO. (*Id.* ¶47).

In mid-April 2020, Lieutenant Commander Paige Armstrong, an officer in the U.S. Public Health Service, was part of a CDC response team that assisted with COVID-19 prevention at the jail. (*Id.* ¶48). Dr. Armstrong noted that "[t]he Cook County Sheriff's Office had taken steps to fight the outbreak inside," "that the interventions were effectively reducing new cases," and that "these resource-intensive efforts to quarantine, isolate, screen, socially distance, and enhance cleaning and disinfection of frequently touched surfaces needed to continue." (*Id.*) The guidelines from federal and state authorities were changing almost weekly based on new information on how COVID-19 spreads. (*Id.* ¶49).

Plaintiff never met nor had any personal face-to-face interaction or conversation with the individual elected official Defendant Dart during his incarceration. (*Id.* ¶50). At no point was Plaintiff afforded access to communicate in-person to Defendant Dart. (*Id.* ¶52). Plaintiff contracted COVID-19 one time during the entirety of the 481 days that he spent in the CCDOC. (*Id.* ¶53).

A Cook County Judge entered an order releasing Plaintiff on electronic monitoring in May 2021. (*Id.* ¶54). Plaintiff pleaded guilty to the offense of Predatory Sexual Assault, a Class X felony with a family member victim under 13 years of age and was sentenced to 15 years in the Illinois Department of Corrections. (*Id.* ¶55). Plaintiff was admitted on October 22, 2022. (*Id.*)

Plaintiff has a history of substance abuse (cocaine) and has been ingesting alcohol since the age of 14. (*Id.* ¶56.) As of the date of Plaintiff's deposition (February 22, 2023), Plaintiff's overall health is fine, and the only medication he takes is Vitamin D. (*Id.* ¶57). Plaintiff has been vaccinated for COVID-19 and has not contracted COVID-19 other than in early 2020. (*Id.* ¶58). Plaintiff concedes that he could have contracted COVID-19 even if he was out of custody. (*Id.*

¶59).

## ANALYSIS

### I. Individual Liability against Sheriff Dart

Conditions-of-confinement claims for pretrial detainees, which are derived from the Due Process Clause of the Fourteenth Amendment, are analyzed under an objective standard. *Hardeman v. Curran*, 933 F.3d 816, 821–22 (7th Cir. 2019). Under this standard, the plaintiff must show "that the conditions in [the jail] posed an objectively serious threat to his health; that the [defendant's] response was objectively unreasonable under the circumstances; and that [he] acted purposely, knowingly, or recklessly with respect to the consequences of [his] actions." *Mays v. Emanuele*, 853 F. App'x 25, 27 (7th Cir. 2021) (citing *Hardeman*, 933 F.3d at 823, 827 and *Miranda v. County of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018)). Furthermore, "[i]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted).

Here, there is no evidence in the record that Defendant Dart had any personal involvement in the events that led to Plaintiff's exposure and contracting of the COVID-19 virus in April 2020. In his amended complaint, Plaintiff does not allege that he had any personal interaction with Defendant Dart or that Defendant Dart was present for, personally witnessed, or had personal knowledge of the events that led to Plaintiff's exposure and contracting of the COVID-19 virus.[1] (*See* Dkt. 19 at 1-5). Additionally, Plaintiff admits that: he never had a face-to-face encounter with

---

[1] The Court notes that paragraph 32 of Plaintiff's amended complaint suggests that Plaintiff wrote a letter to Defendant Dart. (*See* Dkt. 19 at 4, stating that "Sep 22 I spoke to Superintendent Yoksoulian about the letter I wrote to Thomas J. Dart, and the contents of the letter regarding conditions at Cook County jail."). The letter, which is appended to the original complaint (Dkt. 1 at 39-40), is dated September 3, 2020 (months after Plaintiff tested positive for COVID-19) and specifically states that "I have many concerns that I am not sure you are aware of. I have filled out countless grievances along with appeals. The grieved issues are going without water in my cell, smoke filling my cell, not receiving my migraine medicine, no cell furnishings, my mail outgoing being opened, and my contact visit denied, also contracting COVID-19 here." (*Id.* at 39).

8

Defendant Dart (not a meeting, not a conversation, or any other personal interaction); Defendant Dart's signature does not appear on any of Plaintiff's grievance responses; and, at no point was Plaintiff afforded access to communicate in person with Defendant Dart (rather than his subordinates). (Dkt. 72 ¶¶38, 50-52). With respect to Plaintiff's medical care stemming from his COVID-19 infection, Plaintiff admits that he had access to medical care while he was in medical isolation and that he "would not request medication from a correctional officer or supervisor as they are not health services." (*Id.* ¶¶34-35.)

Given the above, the Court finds that Defendant Dart is entitled to summary judgment based on a lack of personal involvement in the events that led to Plaintiff's exposure and contracting of the COVID-19 virus in April 2020.[2]

## II. Official Capacity/*Monell* Liability against Sheriff Dart

An official capacity claim against a government official amounts to a claim against the entity of which the named defendant is an official—here, the office of the Sheriff. *See, e.g., Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008). Sustaining such a claim requires Plaintiff to establish that the violation of his constitutional rights was caused by a policy or custom

---

[2] The Court notes that Defendant Dart argues in the alternative that qualified immunity bars any claim against him in his personal capacity. The Court agrees. Qualified immunity shields a government official from liability for damages in the performance of his duties unless the official violated a clearly established constitutional or statutory right of which a reasonable person would have known. *See e.g., City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam). To be clearly established for this purpose, the contours of the right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This requires a plaintiff to identify similar cases or establish that the right is so clear "that no one thought it worthwhile to litigate the issue." *See, e.g., Dunn v. City of Elgin*, 347 F.3d 641, 650 (7th Cir. 2003) (citation omitted). The right must be established "in a particularized sense, rather than at a high level of generality," though a case "holding that the exact action in question is unlawful is not necessary." *Alicea v. Thomas*, 815 F.3d 283, 291 (7th Cir. 2016). Plaintiff has not satisfied this standard regarding his claim about contracting the *novel* coronavirus in April 2020 (at the height of the global pandemic). As discussed above, Plaintiff did not oppose the Defendants' motion for summary judgment and the Court is unaware of any similar and authoritative cases regarding a jailer's response to a pandemic involving a highly infectious and previously unknown virus. *See e.g., Cullom v. Dart*, No. 20 CV 4034, 2020 WL 7698366 (N.D. Ill. Dec. 27, 2020) (finding Dart entitled to qualified immunity); *Ross v. Russell*, Case No. 7:20-cv-000774, 2022 WL 767093, *14 (W.D. Va., Mar. 14, 2022) (finding jail officials were entitled to qualified immunity because, given the ongoing and changing guidance from health officials as to a novel virus, "neither the policies or occasional lapses [in enforcing the policies] were clearly insufficient to protect prisoners").

of the Sheriff's Office. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978).

In his amended complaint, Plaintiff contends that he contracted COVID-19 in April 2020 because the Sheriff's Office failed to take reasonable measures to prevent the spread of the virus. (Dkt. 19 ¶¶ 8-11). But this theory is belied by Plaintiff's own allegations and lacks support in the evidence that has been adduced by Defendants at summary judgment.[3]

To be sure, Plaintiff admits that there were policies at the jail regarding social distancing, medical isolation/quarantine, and cleaning and disinfecting. (Dkt. 72 ¶¶ 45-47). He also admits that that there were constant updates and amended policies being distributed by the CCSO to detainees and staff, and that he had access to cleaning supplies as they became available. (*Id.* ¶¶ 43, 46-47, 49-50).

As for Plaintiff's specific contentions about a broken mask, he identifies just one occasion on April 22, 2020, when the mask ***he admits he was provided with*** became unwearable during a video court appearance. (*Id.* ¶¶ 21-23.) Plaintiff acknowledges that he requested a new mask during that incident and was not provided with one because there were no others available. (*Id.*) Notably, Plaintiff acknowledges that for ***every other video court appearance*** he was provided with a mask. (*Id.* ¶20).

---

[3] The Court notes that Defendants filed a motion to dismiss back in January 2022, which raised the same arguments that are currently raised in the summary judgment motion. (Dkt. 27). In denying Defendants' motion to dismiss Plaintiff's official capacity/*Monell* claim against Defendant Dart, the Court stated that Plaintiff's allegations were "not robust," but they were "sufficient at the pleading stage to state a *Monell* claim against Sheriff Dart in his official capacity." (Dkt. 41 at 3). The Court stated further that "[t]here may be facts outside of the complaint that eventually support a finding that the Sheriff acted reasonably under difficult circumstances." (*Id.*) After development of the record, it is clear that Plaintiff's theory supporting his *Monell* claim—that he contracted COVID-19 in late April 2020 because the Sheriff's Office failed to take reasonable measures to spread the virus—is not viable, as it is inconsistent with his own allegations and not borne out by the record evidence. "[A] motion for summary judgment requires the responding party to come forward with the evidence that it has—it is the put up or shut up moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 766 (7th Cir. 2009). Plaintiff has not done so here, and his unsupported allegations—which were sufficient at the pleading stage to proceed forward—are no longer sufficient to carry him forward at this advanced stage of the proceedings.

Additionally, Plaintiff admitted in both his deposition and in his responses to requests to admit that measures taken by the CCSO within the jail at all times conformed with the ongoing and evolving recommendations from the CDC and CDHP. (*Id* ¶¶ 46-47). Consistent with those admissions, Defendants point to outside information showing that that CCSO was indeed actively working to control the spread of the virus in the jail throughout the timeframe relevant to this suit. (*Id.* ¶¶ 37, 42, 45, 46). And Plaintiff concedes that he could have contracted the COVID-19 virus if he was out of custody. (*Id.* ¶ 59).

The Court recognizes that the measures implemented by the CCSO did not prevent Plaintiff from contracting the virus in the early days of the pandemic. But "[t]he plain fact is that the country [experienced] a pandemic and cases of COVID-19 [broke] out in prisons and communities across the country." *Coates v. Arndt*, No. 20-C-1344, 2020 WL 6801884, at *2 (E.D. Wis. Nov. 18, 2020). Plaintiff may be dissatisfied that the CCSO did not do more to protect him and other inmates from the virus and/or that the jail did not entirely stop the spread of the virus. However, the record in this case is replete with evidence showing that jail officials took an evolving approach to address the risks of COVID-19 within the jail and attempted—successfully—to mitigate those risks within the confines of the jail setting.

Accordingly, under these circumstances, the Court finds that Defendant Dart is entitled to summary judgment on Plaintiff's official capacity/*Monell* claim.

### III. Indemnification Claim Against Cook County

Because Defendant Dart is entitled to summary judgment, there are no surviving claims for indemnification against Cook County. Therefore, Defendant Cook County is entitled to summary judgment as well.

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [70] is granted. Final judgment is entered in favor of Defendants.[4]

**DATED**: January 17, 2024                     **ENTERED**:

*LaShonda A. Hunt (signature)*

LaShonda A. Hunt
United States District Judge

---

[4] If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court stating the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).